UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| IRWIN W. HUTH, | ) | CASE NO. 5:14-cv-1215 |
| | ) | |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| | ) | |
| REBECCA HUBBLE, et al., | ) | |
| | ) | |
| | ) | |
| DEFENDANTS. | ) | |

Presently before the Court are two motions to dismiss plaintiff's amended complaint—the motion of defendants Rebecca Hubble ("Hubble" or "Mayor Hubble"), the Village of Bolivar ("Village" or "Bolivar"), Mark Myers, and Chad Hilty (collectively "Village Defendants") (Doc. No. 21 (Motion to Dismiss ["Village Defs.' Mot."]) and Doc. No. 21-1 (Memorandum in Support ["Village Defs.' Mem."])), and the motion of defendants Steven Anderson ("Anderson") and Jillian Daisher ("Daisher") (collectively "Village Attorneys") (Doc. No. 19 (Motion to Dismiss ["Village Attys' Mot."]) and Doc. No. 19-1 (Memorandum in Support ["Village Attys' Mem."])).[1] Plaintiff has opposed the motions (Doc. No. 30 (Plaintiff's Opposition to Village Defendants' Motion ["Opp. to Village Defs.' Mot."]) and Doc. No. 31 (Plaintiff's Opposition to Village Attorneys' Motion ["Opp. to Village Attys' Mot."])), and the Village Defendants replied (Doc. No. 32 (Village Defs.' Reply ["Reply"])).

---

[1] Also pending are plaintiff's motion to strike both motions to dismiss as untimely (Doc. Nos. 20 and 23), and plaintiff's "emergency motion" to stay plaintiff's time to respond to the motions to dismiss (Doc. No. 26).

For the reasons contained herein, this case is STAYED until further order of the Court.

## I. BACKGROUND

The events giving rise to the instant action took place on May 19, 2014. In order to provide context for the Court's ruling, it is necessary to briefly discuss a prior federal court case, three criminal cases pending against plaintiff, a writ of prohibition and mandamus brought by plaintiff in the Ohio Supreme Court, and a case brought by plaintiff in the Fifth District Court of Appeals.

**A.  The Massillon Materials Litigation (Northern District of Ohio Case No. 5:14-cv-133)**

In Case No. 5:14-cv-133 in the United States District Court for the Northern District of Ohio ("Massillon Materials Litigation"), Massillon Materials and Lake Region Development Co. (collectively "Massillon Materials" or "company") sued the Village for declaratory relief and money damages regarding "impairment" of a development agreement between Massillon Materials and the Village for operation of the company's business in the Village. This lawsuit was triggered when Village residents voted to change the zoning of property that was part of the company's business operation from "industrial and manufacturing" to "agricultural."

The Massillon Materials Litigation was settled through mediation, and the settlement agreement permitted Massillon Materials to continue its business operations notwithstanding the zoning vote of the Village residents. The settlement was contingent upon Village Council approval. (*See* Massillon Materials Litigation, Doc. No. 15.)

**B. Village Council Meeting May 19, 2014**

On May 19, 2014, the Village Council held a special meeting to consider the settlement of the Massillon Materials Litigation. Mayor Hubble and Village Solicitor, Jillian Daisher, both defendants in the instant action, were present. At the meeting, plaintiff Irwin Huth ("plaintiff" or "Huth") asked questions and spoke about his views concerning the settlement. (*See* Doc. No. 13 (Plaintiff's Amended Complaint[2] ["Compl."]), ¶ 45 and Doc. No. 13-1 (Compl. Ex. A—Transcript from Meeting Video[3] ["Tr."]), at 172-83[4]).)

Sometime during the meeting, Huth stated that "[t]he deck has always been stacked." At that point, Mayor Hubble struck her gavel on the table and said "[l]isten, that's enough." Huth kept speaking. The transcript shows that Hubble then stated "I don't want to hit this again" and "[w]hy do you want me to hit this again?" (Tr. at 178-79.) While there is a dispute about plaintiff's meaning, the parties don't dispute that Huth then made the following statement:

> Huth: Don't make me hurt you. You don't have to do that to me, you don't have to do that to me.

(Tr. at 179.)

After some debate about what plaintiff meant by this statement, he was asked to leave the meeting and did so. (Compl., ¶¶ 60-64.)

**C. Criminal Charges and 60-Day Ban from Village Meetings**

On May 29, 2014, Huth was served with three summonses in connection with the events at the meeting, and was criminally charged for: (1) disruption of a lawful meeting (Ohio

---

[2] For the sake of brevity, plaintiff's amended complaint will be referred to in this opinion as the "complaint."

[3] Plaintiff manually filed with the Clerk's office a "CD ROM recording of Village of Bolivar's 5/19/2014 Special Meeting." (Doc. No. 6.)

[4] References to page numbers are to the page identification numbers generated by the Court's electronic filing system.

Rev. Code § 2917.12(A)(1)); (2) disorderly conduct (Ohio Rev. Code § 2917.11(A)(1)); and (3) menacing (Ohio Rev. Code § 2903.22(A)). (Compl., ¶¶ 74-78.) The three criminal cases against Huth are pending in the New Philadelphia Municipal Court. (Doc. No. 21-2 (Village Defs.' Mot.—Ex. A ["Dockets"]) at 272-80.)[5]

In addition, on June 4, 2014, Huth received a notice from the Village. According to Village Policies and Procedures Section 21.1.2, the Village may ban an individual who has disrupted a meeting in violation of Ohio Rev. Code § 2917.12(A)(1) from a public meeting of the Village for 60 days, and Huth was so banned. (Compl., ¶ 81; *see also* Doc. No. 32-2 (Reply—Ex. A ["Ordinance"]) at 399.)

### D. The Instant Action

The above-described events triggered the instant action in which plaintiff seeks money damages, as well as injunctive and declaratory relief. In summary, plaintiff alleges that the Village Attorneys have not been properly appointed in accordance with Ohio law and, as a consequence, Anderson lacks prosecutorial authority and is illegally prosecuting the criminal cases against Huth. (Compl., ¶¶ 10-18 and 86-123.) Plaintiff also alleges that various ordinances passed by the Village related to Massillon Material's sand and gravel business operation are unlawful, the Village's settlement of the Massillon Materials Litigation was illegal and improper, and that the defendants are part of a "common scheme and plan to overturn the will of the voters,

---

[5] The dockets, which are attached as Exhibit A to the Village Defendants' motion to dismiss, are current through July 18, 2014. An examination of the dockets for the criminal cases, available as public records on the New Philadelphia Municipal Court's website, www.npmunicipalcourt.org, reveals that the criminal cases remain pending as of the date of this Memorandum Opinion and Order.

The dockets in the criminal cases reflect that Huth moved to disqualify Attorney Anderson as the prosecutor. *Id.* The parties do not dispute that Attorney Anderson is no longer prosecuting the criminal cases on behalf of the government. (Doc. No. 21-3 (Village Defs.' Mot.—Ex. B [Compl. for Writ]), ¶ 14.) The public dockets on the New Philadelphia Municipal Court's website for the criminal cases reflect that special prosecutor J. Fitzsimmons is prosecuting the case.

4

to avoid obligations under the law, and to skirt around a valid voter initiative." (Compl., ¶¶ 22-39 and 67.)

In addition to challenging Anderson's lawful status as the Village prosecutor in the criminal cases, Huth alleges that the criminal cases were brought in retaliation for and to stifle the protected political content of his speech at the meeting, that the criminal statutes under which he was charged are unconstitutional, and that the Village banned him from public meetings to silence his protected speech. Plaintiff seeks injunctive relief from being prosecuted, and barred from Village meetings, because of the content of his speech in violation of the First Amendment. (Compl., ¶¶ 126-150.)

Based on these factual allegations, plaintiff brings the following six counts:

Count I: against all defendants pursuant to 42 U.S.C. §§ 1983 and 1988 for violation of plaintiff's First Amendment rights to free speech by bringing the criminal cases and banning plaintiff from Village meetings for 60 days;

Count II: against all defendants pursuant to 42 U.S.C. §§ 1983 and 1988 for prior restraint in violation of the First and Fourteenth Amendments by bringing the criminal cases and banning plaintiff from Village meetings for 60 days;

Count III: pursuant to 28 U.S.C. § 2201 for declaratory relief that the Ohio Rev. Code §§ 2917.11, 2917.12 and 2903.22 are unconstitutional on their face and as applied to plaintiff;

Count IV: against all defendants pursuant to 42 U.S.C. § 1985(3) for conspiracy to deprive plaintiff of his constitutional rights;

Count V: against the Village pursuant to Article I, Section 9, cl. 3 of the U.S. Constitution, which provides that: "No bill of attainder or ex post facto law shall be passed[,]" for banning plaintiff from Village meetings for 60 days even though he has not been convicted of disruption of a lawful meeting; and

Count VI: pursuant to 42 U.S.C. § 1988 for attorney fees.

(Compl., ¶¶ 151-226.)

In his prayer for relief, plaintiff seeks declaratory and injunctive relief from: defendants' unlawful and unconstitutional practices; defendants banning plaintiff from public meetings; defendants prosecuting the criminal cases; and defendants prosecuting plaintiff in the future for his speech. Plaintiff also seeks one million dollars in compensatory damages and attorney fees. (Compl. at 169-70.)

### E. Complaint for Writ of Prohibition and Mandamus in the Ohio Supreme Court

After filing the instant action, Huth filed a complaint for a writ of prohibition and mandamus in the Ohio Supreme Court against the trial judge and the state municipal court. (Complaint for Writ[6] at 281-336.) As in the instant action, Huth alleges in his complaint for writ that defendant Anderson was not legally appointed as the Village Prosecutor and the criminal cases should not be permitted to proceed. *Id*.

The docket for the complaint for writ is available as a public record on the Ohio Supreme Court's website, www.supremecourt.ohio.gov. An examination of the public docket reveals that respondents moved to dismiss the complaint for writ, and that it was dismissed by the Ohio Supreme Court on December 3, 2014.

### F. Plaintiff's Case for Injunction in the Ohio Court of Appeals, Fifth Appellate District

Plaintiff alleges in the complaint that "[h]e also currently has an injunction lawsuit in the Fifth District Court of Appeals, appealing the [t]rial [c]ourt's denial of his injunction to stop an ordinance (related to the sand and gravel issue) which was passed at a special meeting in violation of Ohio Sunshine Law." (Compl., ¶ 70.) Plaintiff's complaint does not provide a case number or any other information regarding the Fifth District case.

---

[6] Ohio Supreme Court Case No. 2014-1214 filed August 8, 2014.

## II. LAW AND ANALYSIS

### A. Standard of Review

Both the Village Defendants and the Attorney Defendants have moved to dismiss plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion to dismiss tests the sufficiency of a pleading—in this case, plaintiff's complaint. The sufficiency of plaintiff's complaint is tested against the notice pleading requirements of Fed. R. Civ. P. 8. Rule 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" The factual allegations in a pleading must be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citing authorities). In order to survive defendants' motions, plaintiff's complaint must "state a claim for relief that is plausible on its face" when the factual allegations in the complaint are accepted as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570).

While the Court's consideration of documents for Rule 12(b)(6) motions is normally limited to the pleadings, there are certain exceptions. The Court may also consider documents that are attached to, incorporated by, or referred to in the pleadings. Documents attached to a motion to dismiss are also "considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [plaintiff's] claim." *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1983)). Further, the Court may consider "materials in addition to the complaint if such materials are public records or are otherwise appropriate for taking judicial notice." *New England Health Care Emps. Pension Fund v. Ernst & Young LLP,* 336 F.3d 495, 501 (6th Cir. 2003) (citations omitted). Accordingly, the Court may consider the documents attached to

plaintiff's complaint and defendants' motions to dismiss, and take judicial notice of the public dockets from state and federal courts available on the courts' websites. *See Rhone v. Wayne Cnty. Prosecutor's Office*, No. 13-13400, 2013 WL 5775475, at *1 n.1 (E.D. Mich. Oct. 25, 2013) (citing *Graham v. Smith*, 292 F. Supp. 2d 153, 155 n.2 (D.Me. 2003)).

One argument of the Village Defendants is that the Court should abstain from proceeding with this case, pursuant to *Younger v. Harris*,[7] pending the outcome of the criminal cases. (Village Defs.' Mem. at 267-68.) "When faced with the threshold question of whether to apply *Younger* abstention, a court must first address the *Younger* issue prior to engaging in any analysis on the merits of the case." *Goodwin v. Cnty. of Summit, Ohio*, Case No. 5:14CV121, 2014 WL 4425750, at *4 (N.D. Ohio Sept. 8, 2014) (citing *Tenet v. Doe*, 544 U.S. 1, 6 n.4, 125 S. Ct. 1230, 161 L. Ed. 2d 82 (2005)).

**B.  *Younger* Abstention Doctrine**

In *Younger v. Harris*, Harris was indicted for violating the California Syndicalism Act and sued in federal district court to enjoin the county district attorney from prosecuting him, contending that the California law was unconstitutional on its face and prevented him from exercising his right to free speech. The lower court enjoined Harris's prosecution on the grounds that the California law was void for vagueness and overbroad. But the Supreme Court reversed, holding that federal courts should not enjoin pending state criminal prosecutions unless "the danger of irreparable loss is both great and immediate." *Younger*, 401 U.S. at 45 (quoting *Fenner v. Boykin*, 271 U.S. 240, 243-44, 46 S. Ct. 492, 70 L. Ed. 927 (1926)). "[D]eclaratory relief is also improper when a prosecution involving the challenged statute is pending in state court at the time the federal suit is initiated." *Younger*, 401 U.S. at 41 n.2. In summary, "a federal court must

---

[7] 401 U.S. 37, 91 S. Ct. 746, 17, L. Ed. 2d 669 (1971).

not, save in exceptional and extremely limited circumstances, intervene by way of either injunction or declaration in an existing state criminal prosecution." *Younger*, 401 U.S. at 56 (Stewart, J. and Harlan, J., concurring).

   1. *Younger* abstention analysis

    *Younger* abstention is appropriate if three criteria are met: (1) there is an ongoing state judicial proceeding; (2) the state proceeding implicates important state interests; and (3) the state proceeding provides an adequate opportunity to raise plaintiff's constitutional claims. *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432, 102 S. Ct. 2515, 73 L. Ed. 2d 116 (1982); *Fieger v. Cox*, 524 F.3d 770, 775 (6th Cir. 2008). If these three criteria are met, "so long as there is no showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate, the federal courts should abstain." *Am. Family Prepaid Legal Corp. v. Columbus Bar Ass'n,* 498 F.3d 328, 332-33 (6th Cir. 2007) (quoting *Squire v. Coughlan*, 469 F.3d 551, 555 (6th Cir. 2006) (*quoting Middlesex Cnty. Ethics Comm.*, 457 U.S. at 435)).

    a. *Ongoing state criminal proceedings*

    In this case, the criminal cases against plaintiff were filed in the New Philadelphia Municipal Court on June 3, 2014. (Dockets at 273, 276, and 279.) The instant action was brought on June 6, 2014. Plaintiff cannot dispute the pendency of the state criminal proceedings because the criminal cases are the very proceedings that plaintiff asks this Court to enjoin, and the statutes under which plaintiff was charged in the criminal cases are the very laws that plaintiff asks this Court to declare unconstitutional. Because the criminal cases were pending at the time the instant action was filed, the first criterion of the *Younger* abstention analysis is satisfied. *Zalman v. Armstrong*, 802 F.2d 199, 204 (6th Cir. 1986) ("[T]he proper time of reference for

9

determining the applicability of *Younger* abstention is the time that the federal complaint is filed.").

b. *State criminal proceedings implicate important state interest*

With respect to the second criterion, a state has an important interest in "enforcing [its] laws against socially harmful conduct that the State believed in good faith to be punishable under its laws and the Constitution." *Younger*, 401 U.S. at 52. In this case, the State of Ohio has an important interest in enforcing its laws regarding orderly public meetings, the orderly conduct of its citizens, and in the freedom of its citizens from fear of physical harm based on the words or conduct of another. Accordingly, the second criterion of the *Younger* abstention analysis is met.

c. *Adequate opportunity to raise constitutional challenges in criminal cases*

To satisfy the third criterion of *Younger* abstention, the pending state criminal proceedings must provide plaintiff with an adequate opportunity to raise his federal constitutional claims. "Abstention is appropriate unless the state law *clearly bars* the interposition of the constitutional claims[,]" and it is plaintiff's burden to show that he is clearly barred from presenting his constitutional claims. *Am. Family Prepaid Legal Corp.*, 498 F. 3d at 334 (emphasis in original) (internal quotation marks and citations omitted).

In the instant action, plaintiff challenges the constitutionality of the state laws under which he was charged both on their face and as applied, and claims that the criminal cases were brought in retaliation for his speech at the meeting and to stifle his right to speak under the First Amendment. Plaintiff does not contend that he is clearly barred from raising in the criminal cases the same constitutional challenges that he brings in the instant action, and there is nothing in the record before the Court on defendants' motions to suggest any such bar. Plaintiff may raise

his constitutional claims in the pending criminal cases. *See Younger*, 401 U.S. at 49. Accordingly, the third criterion of the *Younger* abstention analysis is met.

    2. *Younger* exception analysis

Even if all three criteria are met, *Younger* abstention is not appropriate if there is evidence of (1) bad faith or harassment with respect to state criminal proceedings; or (2) flagrant unconstitutionality of the state law at issue. *See Am. Family Prepaid Legal Corp.*, 498 F. 3d at 335. *Younger* abstention is also inappropriate if there is "an extraordinarily pressing need for immediate federal equitable relief." *Miskowski v. Peppler*, 36 F. App'x 556, 557-58 (6th Cir. 2002) (quoting *Kugler v. Helfant*, 421 U.S. 117, 125, 95 S. Ct. 1524, 44 L. Ed. 2d 15 (1975)). But these exceptions are narrowly construed and difficult to meet, and it is plaintiff's burden to demonstrate that an exception exists. *Goodwin*, 2014 WL 4425750, at *7-8 (citations omitted).

    a. *No bad faith or harassment*

The bad faith/harassment exception is rarely applied. *Goodwin*, 2014 WL 4425750 at *7 (citing *Tindall v. Wayne Cnty. Friend of the Court*, 269 F.3d 533, 539 (6th Cir. 2001)). In discussing this exception, the Sixth Circuit has noted that the Supreme Court has applied the bad faith/harassment exception to "only one specific set of facts: where state officials initiate repeated prosecutions to harass an individual or deter his conduct, and where the officials have no intention of following through on these prosecutions." *Ken-N.K., Inc. v. Vernon Twp.*, 18 F. App'x 319, 324 n.2 (6th Cir. 2001). But the mere allegation that a criminal prosecution is retaliatory is insufficient to support this exception. *See Rucci v. Mahoning Cnty.*, 4:11CV873, 2011 WL 5105812, at *8 (N.D. Ohio Oct. 26, 2011).

There is nothing in the record before the Court on defendants' motions to dismiss showing that plaintiff has been the subject of repeated prosecution for speaking at Village

meetings. By his own admission, plaintiff has engaged in extensive speech—and criticism of the Village—regarding the sand and gravel operations issue.[8] Plaintiff does not allege that he has ever been prosecuted in the past for his speech at the many meetings he has attended, for the content of his website, or for instituting legal action against the Village.

With respect to the pending criminal cases, these three cases arose from a single comment at a single meeting of the Village. Plaintiff does not contend that the state does not intend to follow through on the prosecutions—in fact, he asks this Court to enjoin those prosecutions.

The Court concludes that the bad faith/harassment exception to *Younger* abstention is not applicable in this case.

    b. *Criminal statutes not flagrantly unconstitutional*

The second exception—"flagrant unconstitutionality"—is only available if the state laws under which plaintiff was charged in the criminal cases are "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it." *Younger*, 401 U.S. at 53-54 (citation and quotation marks omitted); *Goodwin,* 2014 WL 4425750, at *9 (citing *Younger* 401 U.S. at 53-54). "This exception, however, appears to be even more narrow than the bad faith or harassment exception; the Supreme Court has never found it to be applicable since it

---

[8] Plaintiff's complaint states that:

> [H]e has attended 99% of the public meetings related to [the sand and gravel operation.] He owns, developed, and maintains a website titled 'stopannexation.info,' which is devoted exclusively to the sand and gravel operation and the Village of Bolivar's actions related thereto. He also currently has an injunction lawsuit in the Fifth District Court of Appeals, appealing [a state court's] denial of his injunction to stop an ordinance (related to the sand and gravel issue) which was passed at a special [Village] meeting, in violation of the Ohio Sunshine Law.

(Compl., ¶ 70.)

first announced the exception in *Younger*." *Zalman*, 802 F.2d at 205 (citing *Moore v. Sims*, 442 U.S. 415, 99 S. Ct. 2371, 60 L. Ed. 2d 1994 (1979); *Trainor v. Hernandez*, 431 U.S. 434, 97 U.S. 434, 97 S. Ct. 1911, 52 L. Ed. 2d 486 (1977)). "*Younger* itself illustrates the narrowness of . . . [this] exception. In that case, the federal plaintiff could not bring himself within the exception even though the statute under which he was indicted had been effectively invalidated . . . as the Court itself acknowledged." *Id*. at 206 (citing *Younger*, 401 U.S. at 40-41).

While there is some question as to whether the Supreme Court has eliminated this exception,[9] that analysis is unnecessary. Even if the exception has not been eliminated, the criminal statutes at issue in this case do not fall within this very narrow exception to *Younger*.

c. *Criminal cases are an adequate forum for plaintiff's constitutional claims*

The third exception applies only when "the federal court concludes that the state proceedings are inadequate because there is no available state forum for the plaintiff's constitutional claims . . . or the state judicial or administrative officers have a conflict of interest or are biased[.]" *Goodwin*, 2104 WL 4425750, at *10 (quoting *Cmty. Treatment Ctrs., Inc. v. City of Westland*, 970 F. Supp. 1197, 1225 (E.D. Mich. 1997) (internal quotation marks and citations omitted)). As the Court discussed, *supra*, the criminal cases provide an adequate state forum for plaintiff's federal constitutional claims, and the Court "must presume that the state courts are able to protect the interests of a federal plaintiff." *Goodwin*, 2104 WL 4425750, at *6 (citing *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15, 107 S. Ct. 1519, 95 L. Ed. 2d (1987)). There is no showing that the trial judge in the criminal cases is biased or has a conflict of interest. Therefore, the third exception does not apply.

---

[9] *See Zalman*, 802 F.2d at 206.

13

3. Plaintiff's opposition to *Younger* abstention

In opposing the application of *Younger* abstention to this case, plaintiff does not dispute that the three criteria of the Younger abstention analysis are satisfied. Rather, he argues that: (1) abstention is inappropriate when First amendment rights are at stake; (2) the delay of the state court proceedings will chill the constitutional right plaintiff seeks to protect; and (3) "[t]here is the realistic possibility that Mr. Huth will again be prosecuted for speaking out at Village of Bolivar public meetings, and his defense of the pending prosecutions will not eliminate the great and immediate harm—that being violations of his right to speak." (Opp. to Village Defs.' Mot. at 377-80.)

a. *Younger abstention applicable to First Amendment cases*

Plaintiff argues abstention is not appropriate when First Amendment rights are at stake. However, the cases cited by plaintiff in support of this proposition involve *Pullman*, not *Younger*, abstention analysis. *See e.g., S. New Jersey Newspapers, Inc. v. State of NJ Dep't of Transp.*, 542 F. Supp. 173, 178 (D. N.J. 1982) ("There are no prosecutions pending with respect to the statute at issue and, thus, the *Younger* form of abstention is not applicable.") *Pullman* abstention analysis is based on an entirely different factual setting than is present in this case. *See id*. at 179 (*Pullman* abstention is proper "where a federal constitutional claim is premised on an unsettled question of state law whose determination by the state court might avoid or modify the constitutional issue . . . ." (internal quotation marks and citations omitted)). Unlike the instant action, there were no ongoing state proceedings in these cases.

Plaintiff also cites *George v. Parratt*, 602 F.2d 818 (8th Cir. 1979) in support of this proposition, but this case is also inapposite. In *George*, no suit had yet been brought in the Nebraska courts, so there was no ongoing state judicial proceeding from which the federal court

14

might abstain. But even in the absence of a pending state proceeding, the Eighth Circuit concluded that the state prisoner plaintiff's federal case claiming constitutional violations arising out of the deprivation of "good time credit" was "particularly appropriate for abstention" because when the issue is decided by the state courts, that decision may "avoid or moot any federal constitutional claims." *George*, 602 F.2d at 823.

Finally, plaintiff cites *Gay v. Bd. of Registration Comm'rs*, 466 F.2d 879, 884 (6th Cir. 1972). *Gay* likewise does not support plaintiff's argument. In *Gay*, the plaintiff challenged the constitutionality of a portion of Kentucky's voter registration statute. In reversing the district court's dismissal of the case on abstention grounds, the Sixth Circuit did not consider *Younger* abstention analysis because "[d]ecisions such as *Younger v. Harris* . . . have little effect here, since they deal with circumstances when a federal court may enjoin a state criminal prosecution or civil action. These decisions . . . have little force in the absence of a pending state proceeding." *Gay*, 466 F.2d at 885 n.8 (internal quotation marks and citations omitted).

In *Younger*, Harris's First Amendment rights were the primary issue in this landmark abstention case. Plaintiff has provided the Court with no applicable authority to support his argument that it is inappropriate to apply *Younger* abstention to cases involving the First Amendment.

b. *Abstention will not delay state court proceedings*

Plaintiff contends that if the Court abstains, he will "suffer the delay of state court proceedings," and the delay alone will chill his First Amendment rights. The three criminal statutes under which plaintiff is charged and which plaintiff asks this Court to declare unconstitutional—disorderly conduct, disrupting a lawful meeting, and menacing—are not statutes that are themselves chilling plaintiff's speech. Even if plaintiff is convicted, those

convictions alone would not prevent plaintiff from attending Village meetings and speaking. Further, plaintiff's ability to promptly raise his constitutional challenges in the criminal cases is dependent upon the proceedings in those cases, not upon abstention by this Court.[10]

Plaintiff's citations to *Sovereign News v. Falke*[11] and *Zwickler v. Koota* do not aid his argument. At issue in *Zwickler*, was a New York law which made it a crime to distribute handbills for another person, containing statements about a candidate in connection with an election for public office, that does not include the name and contact information of the person for whom the handbill is being distributed. Appellant was convicted of violating the New York law by distributing anonymous handbills critical of a United States Congressman seeking re-election. After appellant's conviction was reversed on state law grounds, appellant sued in federal district court seeking declaratory and injunctive relief that the New York law was unconstitutional on its face and violated the First Amendment. *See Zwickler v. Koota*, 389 U.S. 241, 242-43, 88 S. Ct. 391, 19 L. Ed. 2d 444 (1967). The district court applied abstention and dismissed the complaint, "remitting appellant to the New York courts to assert his constitutional challenge in defense of any criminal prosecution for any *future* violations of the statute." *Zwickler*, 389 U.S. at 244-45 (emphasis added). The Supreme Court reversed, finding that in cases where the statute was attacked "on its face for repugnancy to the First Amendment[,] . . . to

---

[10] In the criminal cases, Huth has waived his right to a speedy trial. (Dockets at 273, 276, and 279.) The public record dockets available on the New Philadelphia Municipal Court's website show that the criminal cases were stayed by trial judge pending resolution of Huth's complaint for writ before the Ohio Supreme Court on November 5, 2014. The Ohio Supreme Court dismissed Huth's complaint for writ on December 3, 2014. The public record dockets for the criminal cases show that on December 5, 2014, Huth moved the trial judge to stay the criminal cases pending a decision by the United States Supreme Court in *Elonis v. United States*, U.S. Supreme Court Docket No. 13-983. It now appears that the assigned visiting judge has recently recused himself and assignment of another visiting judge is pending.

[11] Plaintiff quotes extensively from *Sovereign News Co. v. Falke*, 448 F. Supp. 306 (N.D. Ohio 1977) in support of his position. However, this case was remanded by the Sixth Circuit to the district court for further consideration in light of an Ohio Supreme Court decision. *Sovereign News Co. v. Corrigan,* 610 F.2d 428 (6th Cir. 1980). Plaintiff presents no information regarding what support, if any, the district court decision provides to his position after remand.

force the plaintiff who has commenced a federal action to suffer the delay of state court proceedings might itself effect the impermissible chilling of the very constitutional right he seeks to protect." *Zwickler*, 389 U.S. at 252 (citations omitted).

Unlike the appellant in *Zwickler*, Huth does not have to wait until he is prosecuted again at some future time to bring his constitutional challenges, or suffer any chilling effect on his speech because he is delayed in raising those constitutional while awaiting a threatened prosecution. The criminal cases are currently pending, and Huth may raise his constitutional challenges now in those pending cases.

c. *No "great and immediate harm" supporting equitable intervention*

Finally, citing *Younger* in support, plaintiff contends that the Court should equitably intervene in the pending criminal cases because he faces great and immediate harm that cannot be eliminated by defending the criminal cases. The great and immediate harm that plaintiff asserts is a "realistic possibility" that he will be prosecuted again for speaking out at a Village meeting. (Opp. to Village Defs.' Mot. at 380.)

Plaintiff's argument is not persuasive. As stated by the Supreme Court in *Younger*, federal courts

> have power to enjoin state officers from instituting criminal actions. But this may not be done, except under extraordinary circumstances, where the danger of irreparable loss is both great and immediate. Ordinarily, there should be no interference with such officers; primarily, they are charged with the duty of prosecuting offenders against the laws of the state, and must decide when and how this is to be done. The accused should first set up and rely upon his defense in state courts, even though this involves a challenge of the validity of some statute, unless it plainly appears that this course would not afford adequate protection.

*Younger,* 401 U.S. at 45 (quoting *Fenner*, 271 U.S. at 243-44).

17

Plaintiff's concern regarding prosecution for speaking at future Village meetings involves the very same constitutional issues he raises in the context of the pending criminal cases—prosecution under unconstitutional state criminal statutes in retaliation for, and to stifle, exercise of his First Amendment rights. As the Court has already discussed, the pending criminal cases provide an adequate state forum for plaintiff to raise these constitutional challenges. Plaintiff need not wait in uncertainty to be prosecuted for speaking at future Village meetings to address his constitutional challenges—those challenges may be addressed immediately in the pending criminal cases.

Additionally, plaintiff offers no support for his claim that there is a "realistic possibility" he will be prosecuted in the future for speaking at Village meetings. As discussed in the Court's analysis of the bad faith/harassment exception to *Younger* abstention, *supra*, plaintiff does not allege that he has ever been the subject of repeated prosecution by the Village for his speech at the many Village meetings he has attended, for the content of his website, for instituting legal action against the Village, or for any other reason related to the exercise of his First Amendment rights. Plaintiff's mere allegation that there is a "realistic possibility" he will be prosecuted in the future for speaking at Village meetings does not constitute an "extraordinary circumstance" that would support equitable intervention by this Court in the pending criminal cases.

**C. *Younger* Abstention Appropriate to Stay this Action**

Based on the foregoing analysis, the Court finds that all three of the criteria of the *Younger* abstention analysis are satisfied and that no exceptions apply. Accordingly, the Court concludes that it is appropriate to apply the *Younger* abstention doctrine in this case. Thus, the Court will abstain from this matter during the pendency of the criminal cases, and any other

18

pending state proceeding brought by plaintiff that may also be appropriate to consider with respect to *Younger* abstention.[12] Because plaintiff seeks both equitable relief and money damages, the Court concludes that it is appropriate to stay this action, rather than dismiss the case without prejudice. *See Nimer v. Litchfield Twp. Bd. of Trs.*, 707 F.3d 699, 702 (6th Cir. 2013) (citing *Coles v. Granville*, 448 F.3d 853, 865 (6th Cir. 2006) and *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 731, 116 S. Ct. 1712, 135 L. Ed. 2d 1 (1996)).

### III. CONCLUSION

For the reasons contained herein, this case is stayed until the criminal cases, and any other pending state proceedings for which this Court should abstain under *Younger*, are resolved. The parties shall jointly provide notice to the Court at the conclusion of all such proceedings.

Because this case is stayed, the Clerk is directed to administratively close this case. Additionally, the Attorney Defendants' and the Village Defendants' motions to dismiss (Doc. Nos. 19 and 21) are denied without prejudice to refiling upon reactivation of this case. The plaintiff's motions to strike and emergency motion (Doc. Nos. 20, 23, and 26) are denied as moot.

**IT IS SO ORDERED**.

Dated: March 4, 2015

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

---

[12] The Court cannot determine, from the pleadings or the documents before it on defendants' motion to dismiss, the status of plaintiff's case in the Fifth District Court of Appeals.